MARY EVELYN BUELL, *Appellant*, v. AETNA CASUALTY AND
SURETY COMPANY, *Respondent*.

*William J. Van Natter*, for appellant.

*Kenneth G. Burrows* (of *Comfort, Dolack, Hansler, Hulscher, Rosenow & Burrows*), for respondent.

PETRIE, C.J.—Plaintiff, Mary Evelyn Buell, appeals from a judgment partially in her favor in an action for benefits payable under a voluntary compensation policy issued by

defendant, Aetna Casualty and Surety Company. She contends on appeal that she was denied a fair trial because the trial court improperly instructed the jury on the meaning of total and permanent disability. She also contends the trial court (1) improperly denied judgment for witness fees and (2) erroneously calculated the amount of reimbursable medical costs. We reverse the judgment, grant her a new trial, direct payment of additional medical costs, but deny her request for witness fees.

Mrs. Buell, then 54 years of age, was injured in the course of her employment as a licensed practical nurse with Harrison Memorial Hospital on April 4, 1967, when she slipped and fell on a wet floor. Surgical procedures necessitated by this injury have now produced a solid fusion extending from the fourth lumbar vertebra to her sacrum. A rehabilitation counselor testified: "[S]he could not be employable" since the date of her last surgery. Mrs. Buell has never worked outside of her home except as a practical nurse and has not worked since her injury.

At the time of her injury, neither Mrs. Buell nor her employer was covered under the mandatory or elective provisions of the workmen's compensation act, but, through a policy issued by Aetna, her employer provided insurance benefits to workers injured in the course of their employment.

In this action, Mrs. Buell contends that she is totally and permanently disabled by reason of her 1967 injury and seeks benefits payable under Aetna's policy, which purports to provide medical and disability compensation benefits to the same extent as provided under the workmen's compensation act of the State of Washington. By answer to a special interrogatory, the jury found that Mrs. Buell was not totally and permanently disabled by reason of this 1967 injury, but by answer to another interrogatory the jury did increase the amount of the permanent partial disability compensation previously paid to her by Aetna.

We examine first her contention that the jury was improperly instructed on the law of total and permanent disa-

bility. The trial court's only instruction on the meaning of total and permanent disability recited the definition of that term as contained in the workmen's compensation statute, RCW 51.08.160:

> "Permanent total disability" means loss of both legs, or arms, or one leg and one arm, total loss of eyesight, paralysis or other condition permanently incapacitating the workman from performing any work at any gainful occupation.

■ By means of a footnote in *Orr v. Department of Labor & Indus.*, 10 Wn. App. 697, 519 P.2d 1334 (1974), a case decided by this court subsequent to the entry of judgment in the case at bench, we attempted to correct the occasional but erroneous practice of instructing juries on the meaning of total and permanent disability by simply repeating the statutory definition of that term. What was noted marginally in *Orr* we now state authoritatively: Instructing a jury on the meaning of total and permanent disability solely by reciting the statutory definition of that term is inadequate. A total disability instruction should be based upon the explanation of that term contained in *Kuhnle v. Department of Labor & Indus.*, 12 Wn.2d 191, 120 P.2d 1003 (1942) and *Fochtman v. Department of Labor & Indus.*, 7 Wn. App. 286, 499 P.2d 255 (1972). When the facts of a given case warrant, the "odd lot" doctrine should be spelled out clearly.

■ At the risk of unduly protracting this opinion, we quote what was said definitively almost 34 years ago:

> The courts have found great difficulty in defining what is meant by incapacity to perform any work at any gainful occupation, and equivalent expressions used in workmen's compensation acts. They agree that they do not mean that the workman must be absolutely helpless or physically broken and wrecked for all purposes except merely to live. . . .
> The purpose of the act is to insure against loss of wage earning capacity. A workman's wage earning capacity may be completely destroyed, though he still has some capacity to perform minor tasks. . . .
> . . .

A great many courts have adopted [and we now adopt] the rule that, if an accident leaves the workman in such a condition that he can no longer follow his previous occupation or any other similar occupation, and is fitted only to perform "odd jobs" or special work, not generally available, the burden is on the department [or insurer] to show that there is special work that he can in fact obtain.

(Citations omitted.) *Kuhnle v. Department of Labor & Indus., supra* at 197-99. For further refinements, *see Hiatt v. Department of Labor & Indus.*, 48 Wn.2d 843, 297 P.2d 244 (1956); *Pacific Car & Foundry Co. v. Coby*, 5 Wn. App. 547, 489 P.2d 176 (1971); *Fochtman v. Department of Labor & Indus., supra; Shea v. Department of Labor & Indus.*, 12 Wn. App. 410, 529 P.2d 1131 (1974). We conclude that this matter must be remanded for new trial.

Because another issue may recur on retrial, we are constrained to comment on an instruction proposed by the plaintiff and rejected by the trial court. The instruction recited in part:

The testimony of a medical witness is not necessary to sustain a finding of total and permanent disability. A finding of total and permanent disability may be supported by the testimony of a vocational consultant or employment expert.

The plaintiff relies upon our recent opinion of *Fochtman v. Department of Labor & Indus., supra,* to support her proposed instruction. As written, the instruction does not quite reflect the real meaning of *Fochtman.* In that case we authorized proof of total and permanent disability through the testimony of a vocational consultant after presentation of *medical* evidence of a workman's loss of function and extent of physical impairment, provided the vocational consultant's conclusions are based in part upon that medical evidence. The reasoning behind the rule is that physicians are eminently qualified to prove the etiology of an injured workman's pathological condition, degree of physical impairment, and limitations to be placed upon physical activity. Normally, however, physicians are nei-

ther trained nor experienced to prove the needs of the labor market in a given locale or the ability of a given workman to participate effectively in the needs of that market. Upon retrial, if the facts warrant an instruction on the quality of evidence required to support a finding of total and permanent disability, the jury should be told that they may base such a finding upon conclusions of a vocational consultant when those conclusions are based in part upon medical evidence of the injured workman's physical condition and the cause thereof.

We consider, next, Mrs. Buell's contention that she should have been reimbursed for the full amount of her medical and hospital expenses. Aetna denied payment of those expenses because Mrs. Buell had already been reimbursed for those expenses through a collateral source. The trial court held that the existence of the collateral source did not constitute a defense to Aetna's obligation to pay medical and hospital expenses. However, the court also determined, as a matter of law, that the amount of Mrs. Buell's medical and hospital expenses should be reduced by 15 percent because the parties had stipulated that the medical fee schedule promulgated by the Department of Labor and Industries pursuant to RCW 51.04.030 provides fees which are approximately 15 percent below those regularly charged to private patients.

The law of the case, as enunciated by the trial court's unchallenged instruction, establishes that Mrs. Buell is entitled to receive from Aetna "the same benefits for medical treatment and disability compensation that would be received by a workman injured in employment under the Workmen's Compensation Act of the State of Washington." The law of workmen's compensation requires that an injured workman who elects to receive benefits payable under the act shall receive, without charge, all proper and necessary medical and surgical services. RCW 51.36 and 51.40; *Bradley v. Department of Labor & Indus.*, 52 Wn.2d 780, 329 P.2d 196 (1958); *Carmichael v. Kirkpatrick*, 185 Wash. 609, 56 P.2d 686 (1936). If Mrs. Buell had been

covered under the mandatory or elective provisions of the act, the vendors of medical services could not have charged her for services, and the department could not have required her to pay for any portion of those services which are deemed proper and necessary. She is entitled to no less from Aetna under its policy.

 Finally, Mrs. Buell is not entitled to reimbursement for the necessary expenses incurred to present expert witnesses to support her claim. *Nelson v. Industrial Ins. Dep't*, 104 Wash. 204, 176 P. 15 (1918). We decline to accept Mrs. Buell's invitation to overrule that precedent.

The judgment entered on the verdict of the jury is reversed and remanded for a new trial on the issue of the extent of plaintiff's permanent disability attributable to the 1967 injury, based upon instructions consistent with the requirements set forth above and consistent with the workmen's compensation act.

The portion of the judgment relating to medical expenses, which was decided by the court, is modified so as to allow the full amount of medical expenses incurred. Plaintiff is awarded costs on appeal.

The portion of the judgment relating to attorney's fees and costs is affirmed without prejudice to modification of those fees and costs necessitated by the new trial.

PEARSON and REED, JJ., concur.