[No. 4211–II. Division Two. December 16, 1981.]

EDDIE M. ALLEN, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*

*Theadore E. Ripley,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Dinah C. Pomeroy, Assistant,* for respondent.

PEARSON, J.—Plaintiff, Eddie M. Allen, appeals from a judgment of the Superior Court granting the Department of Labor and Industries' motion to dismiss on the basis of insufficient evidence to support a jury verdict.

The record before the Superior Court established the following facts. Plaintiff was born in 1918. After graduating

from high school in 1940, he went to work in the forests of the Olympic Peninsula. He started out as a "whistle punk" and progressed through various other jobs such as "setting chokers," "chasing on the landing," "hook tender," and "climbing," all of which involved hard physical work. By 1965 he was employed in a mill as a shingle packer. This job involved packing shingles into bundles and stacking the completed bundles onto pallets. He worked a 6–hour shift during which he would stack 60 bundles of shingles, each bundle weighing 7 to 8 pounds.

On December 20, 1965, while working at this job, plaintiff slipped on some loose sawdust and struck his coccyx and lower back on a pallet. His claim for compensation for this injury led to the present appeal. He remained off work as a result of this injury until July 1967. Between 1969 and 1972, plaintiff underwent three surgical operations on his coccyx. In December 1970, plaintiff sustained a second injury at the mill. This time he tripped over a pallet while carrying a bundle of shingles and injured his left shoulder. His claim in respect of this injury was closed at a time not specified in the record with an award of 5 percent permanent partial disability. Plaintiff ceased regular employment in January 1971.

After leaving his employment, plaintiff undertook to improve his education and for two quarters he took courses in electronics and small appliance repairs at Peninsula College in Port Angeles. He curtailed his studies when his daughter died in 1974. Plaintiff tried to put his new skills to work, but was unable to find employment doing small appliance repairs; he turned to operating his own repair shop, but this venture was also unsuccessful. In 1976, he returned to college and graduated with an Associate of Arts degree in June 1978.

The history of plaintiff's claim in respect of the 1965 injury to his coccyx may be summarized as follows. After the injury, he was provided treatment by the Department of Labor and Industries. In August 1967, the Department closed his claim with an award of 10 percent of the maxi-

mum allowed for unspecified disabilities. In September 1969, the claim was reopened at plaintiff's request, and was closed with an additional award of 5 percent permanent partial disability. In December 1971, plaintiff applied to have his claim in respect of his coccyx reopened, and in February he was awarded an additional 10 percent permanent partial disability. He applied again in January 1972 for his claim to be reopened for aggravation of the condition, and in September 1977 the Department allowed him an additional 10 percent permanent partial disability. He appealed this award to the Board of Industrial Insurance Appeals, and in September 1978 the Board increased the award a further 5 percent, bringing the aggregate of his disability awards to 40 percent of the maximum allowable for unspecified disabilities. Plaintiff appealed the Board's order to the Superior Court for Clallam County. His appeal was dismissed on the basis of insufficient evidence to put before a jury to consider a permanent total disability award. We disagree with the court below, and remand the case for a jury to consider the evidence.

■■ Plaintiff is seeking to establish permanent total disability resulting from his coccyx injury of December 1965. The scope of review where the Department has challenged the sufficiency of the evidence to take the question of permanent total disability to the jury was stated by this court in *Fochtman v. Department of Labor & Indus.,* 7 Wn. App. 286, 289, 499 P.2d 255 (1972). There we said that such a challenge admits the truth of all plaintiff's evidence and all inferences that can reasonably be drawn therefrom, and requires that the evidence be interpreted most strongly against the Department, and in the light most favorable to plaintiff. While applying this test to the record in the present case, a crucial fact before us is that the Department reopened plaintiff's claim and increased his permanent disability award in September 1977. By reopening a workman's claim and increasing his award, the Department admits the fact of aggravation. *Picich v. Department of Labor & Indus.,* 59 Wn.2d 467, 368 P.2d 176 (1962); *Collins*

*v. Department of Labor & Indus.*, 50 Wn.2d 194, 310 P.2d 232 (1957). Thus, the only issue on appeal from such an award is the extent of the worker's disability resulting from the 1965 injury on or about the date of the last closing of that claim. The cases establishing this rule have done so in the context of permanent partial disability, whereas in the present case plaintiff is claiming permanent total disability. However, there is no reason the rule should be restricted to cases of partial disability. We therefore hold that it applies equally to cases such as the present case where the worker is claiming permanent total disability. Accordingly, the question before us is: Does the evidence, viewed most favorably to plaintiff, establish a prima facie case that he was permanently and totally disabled in September 1977 as a result of his 1965 injury?

The key to the resolution of this issue is the definition of "permanent total disability." The starting point for this definition is RCW 51.08.160, which provides:

> "Permanent total disability" means loss of both legs, or arms, or one leg and one arm, total loss of eyesight, paralysis or other condition permanently incapacitating the worker from performing any work at any gainful occupation.

Plaintiff in this case does not suffer any of the statutorily specified disabilities, and the question becomes whether his coccyx injury is one which permanently incapacitates him from "performing any work at any gainful occupation." This formula has been considered many times but the classic pronouncement upon it is still *Kuhnle v. Department of Labor & Indus.*, 12 Wn.2d 191, 198–99, 120 P.2d 1003 (1942):

> [I]f an accident leaves the workman in such a condition that he can no longer follow his previous occupation or any other similar occupation, and is fitted only to perform "odd jobs" or special work, not generally available, the burden is on the department to show that there is special work that he can in fact obtain.

In order to establish a prima facie case, therefore, plaintiff

need only produce evidence which, if believed by the jury, would show that he is unable to follow his previous occupation and is no longer able to perform or obtain work suitable to his qualifications and training, and that this incapacity is a result of the industrial accident. *Fochtman v. Department of Labor & Indus.,* 7 Wn. App. at 294.

We now turn to the record to determine whether the evidence satisfies these requirements. The record contains testimony of three medical witnesses whose testimony was essentially consistent. Plaintiff was 35 to 40 percent disabled, he had some impairment in the range of motion in his back, and it was recommended that he avoid lifting more than 30 pounds and avoid repetitive bending and sitting for more than 30 minutes.

A vocational consultant also testified. She concluded in response to a lengthy hypothetical question that plaintiff's physical limitations prevented him from returning to his former occupations in shingle mills. His physical limitations were the result of the injury received in December 1965. He lacked the motor coordination and stamina necessary to be a successful shingle packer. Neither could he work at new jobs for which he had received training at the community college. He lacked the motor skills and ability to learn new material necessary to be competitive in appliance repair. His physical limitations and "inability to be socially appropriate" would preclude him from a job in retail selling. Therefore, the vocational consultant concluded, plaintiff was totally and permanently disabled.

█ Inasmuch as the medical testimony concluded that plaintiff was no more than 40 percent disabled, his case for permanent total disability pivots on the sufficiency of the testimony of the vocational expert. This court has authorized the proof of total and permanent disability through the testimony of a vocational consultant. *Fochtman v. Department of Labor & Indus.,* 7 Wn. App. at 295-96. There we said:

> [W]e find that testimony of a vocational consultant or employment expert who would consider medical evidence

of loss of function and physical impairment, his own findings obtained in testing the injured workman, facts relative to the labor market, and his conclusion as to whether the injured workman was so handicapped as a result of the injury that he could not be employed regularly in any recognized branch of the labor market, is desirable, relevant and admissible to establish total disability.

However, such testimony must be based in part on medical evidence of the workman's loss of function and extent of physical impairment. *Buell v. Aetna Cas. & Sur. Co.*, 14 Wn. App. 742, 544 P.2d 759 (1976). In the present case, the vocational consultant stated her opinion that plaintiff could not perform any of his former occupations. She stated this opinion in response to a hypothetical question which included a reference to the limitations on plaintiff's physical activity causally related to the 1965 injury and established by the medical evidence. A reasonable inference from the consultant's testimony, therefore, is that she considered the 1965 injury a proximate cause of plaintiff's total disability in September 1977. The conclusion that plaintiff is totally disabled is therefore based in part upon medical testimony, as required by *Buell.* The vocational expert's opinion that plaintiff could not find work in appliance repairs, retail sales, or any other area was based upon her extensive testing of him and upon her knowledge of the job market. This testimony is therefore within the boundaries laid down in *Fochtman,* in the passage quoted above. Having presented testimony of a vocational consultant to the effect that he is totally and permanently disabled and that the 1965 injury was at least one of the significantly contributing causes of that disability, plaintiff has established a prima facie case which he should be permitted to take to the jury. *Shea v. Department of Labor & Indus.*, 12 Wn. App. 410, 415, 529 P.2d 1131 (1974). In so holding, we of course make no comment on the weight of the evidence produced by plaintiff, but decide only that, if accepted by the jury, this evidence would support a finding of permanent total disability.

The Department argues, however, that plaintiff failed to establish a prima facie case because the evidence established that he suffered a second industrial accident to his shoulder in 1970. This second industrial injury having been established, argues the Department, the finding of permanent total disability must be based upon the second injury, rather than the first injury to plaintiff's coccyx. This argument is based upon a passage in *Erickson v. Department of Labor & Indus.,* 48 Wn.2d 458, 460, 294 P.2d 644 (1956).

> A workman with a permanent *partial* disability, who suffers a further injury, may be permanently totally disabled as a result of the further injury, coupled with the prior disability. The workman's prior injury is not the cause of the total disability, but merely a condition with which the subsequent injury combined to cause the permanent total disability. . . .
>
> A finding of permanent total disability, resulting from a further accident, must be based upon the subsequent injury.

(Citations omitted.) If this rule applied to the present case, it would clearly be dispositive; the plaintiff would be obliged to bring a claim for permanent total disability on the basis of his shoulder injury, and not on the basis of his coccyx injury. However, the rule of *Erickson* has no application in this case.

*Erickson* appears to be *sui generis.* There, plaintiff sought a permanent total disability award with reference to an injury resulting in a loss of hearing. This injury occurred in 1942, with a claim of aggravation in 1949. In 1944, plaintiff had sustained an injury to both legs, for which he had received a partial disability award. In 1949, he sought an increase in this award. Both aggravation claims were commenced in 1949, and were not consolidated. At page 459 the court stated:

> The claims arising from the 1942 ear and the 1944 leg injuries were not consolidated. The record before us contains none of the proceedings with reference to the claim for the 1944 leg injury.

The court further pointed out that the appeal to the Board

with reference to the 1944 leg injury "was pending," and the determination of that appeal was not disclosed in the record.

The posture of the case in *Erickson* was that plaintiff appeared to be seeking a permanent total disability for an injury involving his hearing *alone* which by statute (RCW 51.32.080) was limited to partial disability even where the hearing loss was complete. The court refused this relief and required any total disability award to be based upon the leg injury of 1944.

We do not speculate what the ruling would have been if the appeals involving the two injuries had been consolidated. We believe, however, that *Erickson* is *sui generis* and should be limited to the facts before the court. In the case at bench, plaintiff's entire physical condition was before the court, including (1) the injury of December 1965, (2) the injury of December 1970, and (3) a determination that the disability from the injury of December 1965 had been increased subsequent to the second injury. Based upon the testimony of the vocational consultant, the jury would be warranted in concluding that plaintiff is presently totally disabled, and that such disability resulted from an aggravation of his initial injury superimposed upon the second injury. *Picich v. Department of Labor & Indus.*, 59 Wn.2d 467, 368 P.2d 176 (1962); *Collins v. Department of Labor & Indus.*, 50 Wn.2d 194, 310 P.2d 232 (1957); *Clayton v. Department of Labor & Indus.*, 36 Wn.2d 325, 217 P.2d 783 (1950).

There being sufficient evidence in the record to support a verdict for plaintiff, we reverse the order of dismissal and remand the case for jury trial.

PETRIE, A.C.J., and PETRICH, J., concur.