[No. 14675-4-II. Division Two. August 19, 1993.]

ALBERT W. GRAHAM, *Appellant,* v. THE WEYERHAEUSER COMPANY, *Respondent.*

*George M. Riecan* and *Riecan Law Offices Inc. P.S.,* for appellant.

*Kathryn D. Fewell,* for respondent.

MORGAN, J. — In this workers' compensation case, Albert Graham appeals a jury verdict awarding permanent partial disability rather than permanent total disability. We affirm.

On March 3, 1986, Graham injured his back while loosening frozen brakes on a log truck. The injury occurred in the course of his employment with Weyerhaeuser.

Graham filed a claim for industrial injury. The claim was allowed, and Graham was compensated for medical treatment and time loss from April 1986 to July 1987. The claim was closed in November 1987, and Graham was awarded compensation for permanent partial disability due to low back impairment.

Graham appealed to the Board of Industrial Insurance Appeals. He argued that his disability was permanent and total rather than permanent and partial. The Board ruled that his disability was permanent and partial.

Graham appealed to the superior court. Again, he argued that his disability was permanent and total rather than permanent and partial. A jury ruled his disability was permanent and partial.

During the evidential phases of the jury trial,[1] Graham's doctor testified that Graham was capable of engaging in light work if he did not lift more than 25 pounds and observed certain other restrictions. Two doctors hired by Weyerhaeuser testified to the same effect. A vocational counselor hired by Graham testified that due to these restrictions, Graham was disabled from performing all jobs generally available on the competitive labor market in the area in which he lived. A vocational counselor hired by Weyerhaeuser testified Graham was not disabled from performing various jobs,[2] and that all of those jobs were generally available on the competitive labor market in the area in which he lived.

---

[1]The evidential phases of the trial consisted of the attorneys reading aloud a written transcript of evidence heard by the Board. *See* RCW 51.52.115.

[2]The jobs included saw sharpener, hotel/motel desk clerk, cashier, delivery driver, security officer, lubrication specialist, parts orderer and stockroom clerk.

At the conclusion of the evidence, the trial court gave various instructions on the concept of total disability.[3] Graham objected, arguing that these instructions were inadequate unless accompanied by certain instructions he was proposing.[4] The trial court overruled.

---

[3]Instruction 14 stated:

"Once an injured worker seeking to establish a permanent total disability proves that he is incapable of performing light or sedentary work of a general nature, then he has met his burden of proof to establish permanent total disability."

Instruction 15 stated:

"A permanent total disability is an impairment of mind or body which renders a worker unable to perform a gainful occupation with a reasonable degree of success and continuity.

"Permanent total disability does not require that the worker must be absolutely helpless for all purposes. The purpose of the Workers Compensation Act is to insure against loss of all reasonable wage earning capacity. A worker's wage earning capacity may be completely destroyed even though he still has some capacity to perform minor tasks. A worker who is so injured that he can perform no services for which a reasonably stable market exists may be totally disabled. If he is so disabled as a result of the work connected injury, as to be unable to perform or obtain work suitable to his qualifications and training.

"The test for total disability requires a study of the whole person as an individual — weakness and strengths, age, education, training and experience, reaction to the injury, loss of function, and any other relevant factors that determine the question as to whether as a result of the injury the worker is disqualified from obtaining or performing employment generally available in the labor market."

Instruction 16 stated:

"Total disability is an impairment of mind or body which renders a worker unable to perform a gainful occupation with a reasonable degree of success and continuity. It is the loss of all reasonable wage earning capacity.

"A worker is totally disabled if unable to perform regular gainful employment within the range of his or her capacities, training, education and experience. A worker is not totally disabled solely because of inability to return to his or her former occupation. However, total disability does not mean that the worker must have become physically or mentally helpless.

"Total disability is permanent when it is reasonably probable to continue for the foreseeable future."

[4]Graham's proposed instruction 11 stated:

"If, as a result of an industrial injury, a worker is able to perform only special work not generally available, then the worker is totally disabled, unless you find that some special kind of work which he or she can perform is available to the worker on a reasonably continuous basis.

"Once an injured worker seeking to establish a permanent total disability proves that he is incapable of performing light or sedentary work of a general nature, the burden of proof shifts to the employer, who is the defendant in this

The broad issue on appeal is whether the trial court failed to instruct properly on the concept of total disability. Thus, we begin by analyzing that concept.

## I

 The statutory definition of total disability is "loss of both legs, or arms, or one leg and one arm, total loss of eyesight, paralysis or other condition . . . incapacitating the worker from performing any work at any gainful occupation."[5] RCW 51.08.160. By itself, however, this definition does not adequately explain total disability to the jury. *Buell v. Aetna Cas. & Sur. Co.*, 14 Wn. App. 742, 744, 544 P.2d 759 (1976).

Essential to an adequate explanation is the distinction between general and special work. As the Supreme Court said in *Kuhnle v. Department of Labor & Indus.*, 12 Wn.2d 191, 199, 120 P.2d 1003 (1942) (quoting *White v. Tennessee Consol. Coal Co.*, 162 Tenn. 380, 385, 36 S.W.2d 902 (1931)):

---

case, to prove that odd lot or special work of a non-general nature is available to the worker."

Graham's proposed instruction 10 stated:

"Permanent total disability is an impairment of mind or body which renders a worker unable to perform a gainful occupation with a reasonable degree of success and continuity.

"Permanent total disability does not require that the worker must be absolutely helpless for all purposes. The purpose of the workers' compensation act is to insure against loss of wage earning capacity. A worker's wage earning capacity may be completely destroyed, even though he still has some capacity to perform minor tasks. A worker who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may be totally disabled, if he is so disabled as a result of the work connected injury as to be unable to perform or obtain work suitable to his qualifications and training.

"The test for total disability requires a study of the whole person as an individual — weaknesses and strengths, age, education, training and experience, reaction to the injury, loss of function, and any other relevant factors that determine the question as to whether, as a result of the injury, the worker is disqualified from obtaining or performing employment generally available in the labor market."

[5] RCW 51.08.160 includes the concept of permanent disability, as well as the concept of total disability. We omit the former concept because it is not in issue in this case.

The authorities draw a distinction between cases in which it appears that the injured employe can do light work of a general nature and where he is only fitted to do 'odd' jobs, or special work, not generally available.

Whether work is general or special depends on whether it is generally available on the competitive labor market. General work is work, including light or sedentary work, *Spring v. Department of Labor & Indus.*, 96 Wn.2d 914, 919, 920, 640 P.2d 1 (1982); *Kuhnle*, 12 Wn.2d at 199, that is reasonably continuous, *Kuhnle*, 12 Wn.2d at 197 (citing *Green v. Schmahl*, 278 N.W. 157 (Minn. 1938)); *Allen v. Department of Labor & Indus.*, 16 Wn. App. 692, 694, 559 P.2d 572 (1977); *Fochtman v. Department of Labor & Indus.*, 7 Wn. App. 286, 292, 294, 298, 499 P.2d 255 (1972); *Nash v. Department of Labor & Indus.*, 1 Wn. App. 705, 709, 462 P.2d 988 (1969), within the range of the worker's capabilities, training, education and experience, *Allen v. Department of Labor & Indus.*, 30 Wn. App. 693, 698, 638 P.2d 104 (1981); *Fochtman*, 7 Wn. App. at 295, 298; *Nash*, 1 Wn. App. at 709, and generally available on the competitive labor market.[6] *Spring*, 96 Wn.2d at 918 (competitive labor market); *Allen*, 30 Wn. App. at 699 ("recognized branch of the labor market") (quoting *Fochtman*); *Allen*, 16 Wn. App. at 693 ("reasonably stable market") (quoting *Lee v. Minneapolis St. Ry.*, 41 N.W.2d 433 (Minn. 1950)); *Buell*, 14 Wn. App. at 746 ("labor market"); *Fochtman*, 7 Wn. App. at 294 ("any well-known branch of the labor market"); *Fochtman*, at 298 ("competitive work market"). Special work is work, including light or sedentary work, *Spring*, 96 Wn.2d at 920, not generally available on the competitive labor market.[7] *Wendt v. Department of Labor*

---

[6]We assume but need not hold that this labor market is the one in the locale in which the worker lives. Here, Graham lived in the Chehalis-Centralia locale, and both vocational experts expressly utilized the competitive labor market in that area. *See* Report of Proceedings 321, 546-59. *See also Buell*, 14 Wn. App. at 746 (referring to "the labor market in a given locale").

[7]For reasons explained later in the text, this case does not involve the odd lot doctrine. Therefore, it is necessary to distinguish special work from general work, but not to consider the attributes that special work must have in order to satisfy the odd lot doctrine. Parenthetically, we observe that in an odd lot case, it

& *Indus.*, 18 Wn. App. 674, 681, 571 P.2d 229 (1977); *Allen*, 16 Wn. App. 693, 694; *Buell*, 14 Wn. App. at 745; *Nash*, 1 Wn. App. at 709.

The concept of total disability involves both general and special work. If as a result of an industrial injury a worker cannot perform general work, he or she is totally disabled, even though he or she can perform special work,[8] unless the so-called "odd lot doctrine" applies.[9] *Spring*, 96 Wn.2d at 919 (majority opinion); *Spring*, at 925 (Utter, J., concurring in the dissent); *Kuhnle*, 12 Wn.2d at 197-200; *Allen*, 30 Wn. App. at 697-98; *Allen*, 16 Wn. App. at 693-94; *Fochtman*, 7 Wn. App. at 292, 294; *Nash*, 1 Wn. App. at 709. The odd lot doctrine provides that a worker is not totally disabled if he or she can both perform and obtain[10] special work. *Spring*, 96 Wn.2d at 918; *Kuhnle*, 12 Wn.2d at 198-99; *Allen*, 30 Wn.

---

could be argued that special work can satisfy the odd lot doctrine, and thus defeat a worker's claim for total disability compensation, only if it is available in the locale where the worker lives, see the preceding footnote, and within the range of the worker's capabilities, training, education and experience. The reason, it could be argued, is that a worker cannot perform and obtain special work that lacks either of these characteristics. Additionally, it could be argued that special work must be reasonably continuous. The reason, it could be argued, is that the worker who cannot perform any work except sporadically available special work is totally disabled, and in need of total disability compensation, to about the same degree as a worker who can perform no work at all. *See Allen*, 16 Wn. App. at 693, 694; *Nash*, 1 Wn. App. at 709. We do not rule on these arguments in this case.

[8]The nature of the evidence admissible to prove this proposition was discussed in *Fochtman*. *See also Spring*, 96 Wn.2d at 922 (describing prima facie case of total disability).

[9]"Odd lot doctrine" apparently refers to the labor of workers who can perform special but not general work. In *Kuhnle*, 12 Wn.2d at 199, the Washington Supreme Court quoted a Tennessee case, which in turn quoted an English case. The English judge commented: "I should say that if the accident leaves the workman's labor in the position of an "odd lot" in the labor market, the employer must show that a customer can be found who will take it."

[10]The reason for requiring that a worker must be able to "obtain" as well as perform special work is not hard to discern. A worker who can perform special work cannot necessarily obtain it, for by definition, special work is not generally available on the competitive labor market. Thus, a worker otherwise entitled to a finding of total disability should not be deprived of such finding unless the jury

App. at 697-98; *Fochtman*, 7 Wn. App. at 294, 298; *Nash*, 1 Wn. App. at 709.

In court, the worker has the burden of proving that he or she is totally disabled,[11] but that burden is met by proof that he or she cannot perform general work. *Spring*, 96 Wn.2d at 919-20 (majority opinion); *Spring*, at 925 (Utter, J., concurring in the dissent); *Allen*, 30 Wn. App. at 697-98; *Allen*, 16 Wn. App. at 693. The worker has no burden of proving inability to perform special work.[12] *Spring*, 96 Wn.2d at 919-20 (majority opinion); *Spring*, at 925 (Utter, J., concurring in the dissent). An employer wishing to rely on the odd lot doctrine has the burden of proving that the worker can both perform and obtain special work. *Spring*, 96 Wn.2d at 918, 919-20; *Kuhnle*, 12 Wn.2d at 197, 198, 199; *Allen*, 30 Wn. App. at 697, 698; *Wendt*, 18 Wn. App. at 681; *Allen*, 16 Wn. App. at 693, 694; *Fochtman*, 7 Wn. App. at 292, 294. The reason, apparently, is that the odd lot doctrine operates like an affirmative defense; when successfully invoked by the employer, it precludes a finding of total disability, even

---

is persuaded not only that he or she can perform special work, but also that he or she can obtain it.

· In contrast, there is no reason to require a conjunctive relationship between "perform" and "obtain" when analyzing whether a worker is totally disabled due to his or her ability to perform general work. That matter is discussed in section II-B of the text.

[11]We limit this statement to cases like the one here, in which the worker is the appellant in superior court. We express no opinion on who has the burden when the worker is the respondent in superior court. *See* RCW 51.52.115.

[12]In *Spring*, the worker met the burden of proving that he could not perform work of a general nature. 96 Wn.2d at 919. The trial court, however, required him to prove he could not perform work of either a general or special nature. 96 Wn.2d at 919-20. The Supreme Court found error and remanded for new trial. 96 Wn.2d at 920. It held:

> The trial court erred in concluding that Spring had failed to make a prima facie case because of "failure to establish total inability to perform any type of light or sedentary work". . . .
>
> . . . Under *Kuhnle*, the injured worker need not show that he cannot perform *any* light or sedentary work, but must prove only that he is incapable of performing light or sedentary work of a *general* nature.

96 Wn.2d at 918-19; *see also* 96 Wn.2d at 925 (Utter, J., concurring in the dissent).

though the worker may have proved that he or she cannot perform general work.

Returning to the statutory definition of total disability, a worker is incapacitated "from performing any work at any gainful occupation" within the meaning of RCW 51.08.160 if he or she cannot perform general work. As an exception, however, the worker who cannot perform general work will not be incapacitated "from performing any work at any gainful occupation" if he or she can both perform and obtain special work. The burden of proving inability to perform general work rests on the worker, while the burden of proving ability to perform and obtain special work rests on the employer.

## II

Having analyzed the concept of total disability, we can now discuss Graham's specific arguments. As we interpret his brief, there are four.

## A

Graham argues that the trial court erred when it gave instruction 14 without also giving his proposed instructions 11 and 10. Essentially, he says that instruction 14 inadequately defined total disability and his burden of proof.

Instruction 14 stated:

> Once an injured worker seeking to establish a permanent total disability proves that he is incapable of performing light or sedentary work of a general nature, then he has met his burden of proof to establish permanent total disability.

Based on the analysis set forth above, we hold that these propositions were true and correct, and that there was no error in giving instruction 14.[13]

## B

Graham argues that the trial court erred by omitting the words "or obtain" from the first paragraph of its instruction 15. He says that that paragraph of instruction 15 should have read:

---

[13]We do not mean to imply, however, that instruction 14 was so clearly worded that it should be used as a model in every case.

> Permanent total disability is an impairment of mind or body which renders a worker unable to perform *or obtain* a gainful occupation with a reasonable degree of success and continuity.

Graham's thesis is that a worker is totally disabled if he or she is *either* unable to perform *or* unable to obtain general work. If accepted, this thesis would create four categories of worker: (1) the worker who can neither perform nor obtain general work; (2) the worker who cannot perform but who can obtain general work; (3) the worker who can perform but not obtain general work; and (4) the worker who can both perform and obtain general work.

The first category is not affected by the words "or obtain". If an instruction includes those words, the worker is totally disabled, because by hypothesis he or she is both unable to perform and unable to obtain general work. If an instruction does not include those words, the worker is still totally disabled, because by hypothesis he or she is unable to perform general work.

The second category does not exist. As a matter of human experience, one who cannot perform general work will not be hired to do it or, if hired, will be fired so quickly that the hiring lacks significance.

The third category also does not exist. By definition, general work is work generally available on the competitive labor market. Thus, the worker who can perform general work can also obtain it.[14]

The fourth category, like the first, is not affected by the words "or obtain". If an instruction includes those words, the worker is not totally disabled, because by hypothesis he or she can both perform and obtain general work. If an instruction does not include those words, the worker is still not totally disabled, because by hypothesis he or she can perform general work.

---

[14]Surely, the worker who can perform general work may need time to find it on the labor market. He or she also may need financial assistance during that time. Under the Washington statutes, however, such assistance is labeled unemployment compensation rather than workers' compensation. *See* RCW 50.20-.010.

These observations demonstrate that the words "or obtain" are superfluous when total disability is being defined in terms of general work. Subject to the odd lot doctrine,[15] total disability turns on whether a worker can perform general work, and the trial court did not err when it omitted the words "or obtain" from the first paragraph of instruction 15.

This result is consistent with the purpose of the Industrial Insurance Act. According to the Supreme Court, that purpose "is to insure against loss of wage earning capacity." *Kuhnle*, 12 Wn.2d at 197. The worker who can perform general work has wage earning *capacity*, whether or not he or she has been able to obtain a job. Conversely, the worker who cannot perform general work lacks wage earning *capacity*, except when he or she can both perform and obtain special work.

Our result is also consistent with *Washington Irrig. & Dev. Co. v. Sherman*, 106 Wn.2d 685, 693-94, 724 P.2d 997 (1985). In that case, the worker proposed an instruction that included the words "or obtain". The trial court refused that instruction, giving instead one that included only the word "perform". The Supreme Court found no error.

Finally, our result is consistent with the use of the word "obtain" in cases cited by Graham. *E.g., Kuhnle; Fochtman.* Where those cases use the word in connection with special work, its use is appropriate and often required. *E.g., Kuhnle,* 12 Wn.2d at 199 (employer has onus of showing special work can be obtained); *Fochtman*, 7 Wn. App. at 294 (incumbent on Department to show special work can be obtained); *Fochtman*, at 295 (same). Where those cases use the word in connection with general work, they do so in an effort to state that a worker is totally disabled if, as the result of an industrial injury, he or she cannot do general work. *E.g., Kuhnle*, 12 Wn.2d at 198 ("[T]he familiar rule [is] that inability to obtain work, caused by an injury, is classed as total disability") (quoting *Moore v. Peet Bros. Mfg. Co.,* 99 Kan. 443, 162 P. 295 (1917)); *Fochtman*, 7 Wn. App. at 299 (quoting *Kuhnle*). To

---

[15]In cases involving the odd lot doctrine, the words "and obtain" are important with respect to special work. See footnote 10.

our knowledge, no case states that a worker who can perform *general* work is totally disabled because he or she cannot obtain such work.

## C

Graham's next argument is comprised of two assertions. First, he says the trial court was required to instruct that he could be totally disabled even though he retained the ability to perform special work. Second, he says that the trial court failed to so instruct.

The first assertion is correct. Most injured workers are not helpless. Therefore, evidence that shows inability to perform general work will frequently support an additional, residual inference of ability to perform special work.[16] Except when the odd lot doctrine is in issue, this residual inference is without legal significance, and the jury should be so informed in a nontechnical way.

The second assertion is incorrect. Instruction 15 said that a worker could be totally disabled without being "absolutely helpless for all purposes." It also said that the purpose of the workers' compensation act is to insure against loss of all reasonable wage earning capacity, and that a worker could lack such capacity "even though he still has some capacity to perform minor tasks." It also said that a worker may be totally disabled if he or she "can perform no services for which a reasonably stable market exists", thus implying that a worker may be totally disabled even though he or she can perform services for which a reasonably stable market does not exist. Instruction 14 said that Graham could prove

---

[16]As Graham points out, the *Kuhnle* case provides an example. In that case, a doctor called by the worker testified as follows: "Q. Could you say whether you think he is able to work in the competitive labor market? A. There is not any doubt there are some things he could do. Of course he is a man that is considerably handicapped . . . Q. He could not return to his former occupation, then? A. I don't believe so. He might but I rather doubt if he could. Q. Would he be able to compete in the ordinary competitive market for ordinary general manual labor of a gainful occupation? A. Of course that question does not admit of a clear cut answer. A man may be able to follow a gainful occupation, however little that is and still you probably would not be absolutely correct in saying that he could go out and compete in the market, whatever that means to compete." *Kuhnle*, 12 Wn.2d at 194-95.

total disability by proving inability to perform general work, thus implying that he did not have to prove inability to perform special work. Instruction 16 reiterated many of the same concepts. Though not models of clarity,[17] these instructions adequately informed the jury that Graham could be totally disabled even if he retained the ability to perform special work.

If instructions 15 and 16 adequately informed the jury that Graham could be totally disabled even if he retained the ability to do special work, it follows that there was no error in omitting Graham's proposed instructions on the same subject. The proposed instructions reiterated principles already covered in instructions 15 and 16,[18] and their omission was not prejudicial.

## D

Graham argues that he was entitled to instructions describing the odd lot doctrine. A requested instruction should not be given unless there is substantial evidence to support it. *Klein v. R.D. Werner Co.*, 98 Wn.2d 316, 318-19, 654 P.2d 94 (1982); *Haysom v. Coleman Lantern Co.*, 89 Wn.2d 474, 481-82, 573 P.2d 785, 93 A.L.R.3d 86 (1978); *Langan v. Valicopters, Inc.*, 88 Wn.2d 855, 866, 567 P.2d 218 (1977). The reason, of course, is that an instruction not supported by substantial

---

[17]It appears that instructions 15 and 16 are the result of piecing together various statements made by the Supreme Court in *Kuhnle*. Nothing we are aware of indicates that the Supreme Court intended those statements to be used as jury instructions.

[18]Part of proposed instruction 11 stated, "If, as a result of an industrial injury, a worker is able to perform only special work not generally available, then the worker is totally disabled . . .." This is merely a converse formulation of the proposition in instruction 14. The rest of proposed instruction 11 dealt with the odd lot doctrine and will be discussed in connection with that subject.

Part of proposed instruction 10 stated, "A worker who is so injured that he can perform no services other than those which are so limited in quantity, dependability, or quality that a reasonably stable market for them does not exist, may be totally disabled . . .." This merely expressed in negative terms exactly the same proposition that instruction 15 expressed in positive terms when it said, "A worker who is so injured that he can perform no services for which a reasonably stable market exists may be totally disabled . . .."

evidence cannot rationally be used by the jury. At best, it is ineffective; at worst, it invites the jury to proceed irrationally.

Here, a vocational counselor hired by Graham testified Graham was disabled from performing all jobs generally available on the competitive labor market in the area in which he lived. A vocational counselor hired by Weyerhaeuser testified Graham was not disabled from performing various jobs, and that those jobs were generally available on the competitive labor market in the area in which Graham lived. There was no evidence that Graham could perform or obtain a job not generally available on the labor market. This evidence was insufficient to support instructions on the odd lot doctrine,[19] and the trial court did not err when it declined to instruct on that doctrine.

Even if the trial court had erred in declining to instruct on the odd lot doctrine, the error would not warrant reversal. Instructional error warrants reversal only if prejudicial. *Caruso v. Local 690, Int'l Bhd. of Teamsters*, 107 Wn.2d 524, 529-30, 730 P.2d 1299, *cert. denied*, 484 U.S. 815 (1987); *Brown v. Spokane Cy. Fire Protec. Dist. 1*, 100 Wn.2d 188, 196, 668 P.2d 571 (1983). The odd lot doctrine provides that a worker is not totally disabled, even though he or she has proven inability to perform general work, if he or she can perform and obtain special work. Thus, the odd lot doctrine provides an additional way for a worker to lose, and we are unable to perceive how the omission of odd lot instructions could have prejudiced Graham.

Affirmed.

SEINFELD, A.C.J., and PETRICH, J. Pro Tem., concur.

---

[19]This conclusion also disposes of Graham's argument that the trial court erred when it ruled there was insufficient evidence of special work to support the giving of an odd lot instruction. As is apparent from the text, we agree with the trial court on that point.