IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DEBORAH J. LAWRENCE,<br><br>　　　　　　　Appellant,<br><br>　　　v.<br><br>DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON,<br><br>　　　　　　　Respondent. | No. 77537-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br>FILED: March 25, 2019 |

CHUN, J. — In 2005, Deborah Lawrence suffered an industrial injury for which she began receiving workers' compensation benefits. In 2013, the Department of Labor and Industries (the Department) ended Lawrence's time-loss compensation benefits as it determined she could perform gainful employment, and it subsequently closed her claim with category 2 awards for her physical and mental health conditions.

Lawrence appealed to the Board of Industrial Insurance Appeals (the Board), which affirmed the Department's decision. Lawrence then appealed to superior court and a jury returned a verdict in favor of the Department. On appeal to this court, Lawrence claims the trial court erred by (1) denying her request for an "odd lot" jury instruction; and (2) admitting evidence regarding her criminal history and drug use. We affirm.

I.
BACKGROUND

In September 2005, Lawrence suffered an industrial injury while working at Ivar's Seafood, Inc. She attempted to return to her job two or three times after her injury, but "it didn't work for [her]" because the job required a lot of walking. Lawrence began receiving various treatments for her back injury.

The Department accepted Lawrence's claim in October 2005 and began making payments to her.

Two years after the injury, Lawrence began receiving mental health counseling. The Department accepted the conditions of major depressive disorder and anxiety or adjustment disorder with anxiety and modified its payments to Lawrence accordingly.

Several years later, in his report dated December 29, 2011, Dr. Thomas Seib, the attending physician on Lawrence's claim, recommended a category two[1] impairment of the lumbar spine. Still, he believed Lawrence was capable of full-time work. In Dr. Seib's opinion, Lawrence could perform light to medium work. He believed her back injury had reached maximum medical improvement.

On referral from the Department, Dr. Doug Robinson conducted a psychiatric independent medical evaluation on September 7, 2012. Dr. Robinson asked Lawrence about her personal, educational, marital, mental, and employment histories. Dr. Robinson also inquired about her criminal history and methamphetamine use while her claim was open. Ultimately, Dr. Robinson

---

[1] To rate injuries like Lawrence's (back and mental health), the Department uses a category system that ranges from category one of no impairment to category eight of severe impairment. WAC 296-20-280 (categories for back injury); WAC 296-20-330 (categories for mental health impairments).

concluded Lawrence's mental health impairments had reached maximum medical improvement, she qualified for a category two permanent partial disability award, and she could return to work in a cashier job.

In 2012, the Department asked Robbie Hamilton, a vocational counselor, to complete an ability to work assessment for Lawrence. Hamilton reviewed Lawrence's work and medical histories. He determined Lawrence possessed transferable skills from her previous jobs as a fast food worker and manager and could work as a cashier. He noted, however, that Dr. Seib stated Lawrence may require a sit/stand stool accommodation for use on an as-needed basis. Hamilton conducted a survey of the local labor market and found cashiering opportunities that would provide the stool accommodation at multiple stores, including 7-Eleven, AM/PM, Vitamin World, Chevron, and Shell.

The Department then sent the job analysis to Dr. Seib for review. Dr. Seib approved Lawrence for a general cashier position with a sit/stand stool accommodation.

On April 18, 2013, the Department ended Lawrence's time-loss compensation benefits as paid through April 8, 2013.

On January 31, 2014, the Department closed Lawrence's claim with a category 2 award for both her back and mental health conditions. Lawrence appealed the Department's order ending her time-loss compensation benefits and closing her claim to the Board.

For her appeal, Lawrence hired Richard Cheesman to conduct a vocational assessment. Cheesman reviewed Hamilton's assessment and

3

Lawrence's medical records. Cheesman stated he contacted some of the employers identified in Hamilton's assessment and he believed they could not suffcently provide the sit/stand stool accommodation. While he agreed Lawrence could likely sit on breaks, he did not believe she could do so on an as-needed basis. In Cheesman's opinion, Lawrence would not be successful in obtaining or maintaining a job as a cashier because of her physical and mental conditions.

Lawrence also retained Dr. Ronald Early, a licensed physician, to evaluate her mental health. Dr. Early found Lawrence's "personality traits tended to be passive aggressiveness, schizoid, or shyness, basically borderline, which is some kind of emotional lability and self-defeating factors, which represents basically doing things to create problems without intent, or problems for herself without intent." He ultimately concluded her injury caused her to develop anxiety and depression and believed her "prognosis for return to work was poor." He specifically did not believe Lawrence could work as a cashier because of her inability to tolerate interacting with others, confront stress, and maintain focus. Dr. Early determined Lawrence met the criteria for a category three permanent partial mental-health impairment.

The Board issued a proposed decision and order affirming the Department's decision on January 30, 2015.

Lawrence then filed a petition for review to the superior court for a jury trial. At trial, Lawrence argued that she had a permanent and total disability and

4

that her permanent award for her mental health impairment should be category three as opposed to category two.[2]

Lawrence asked the court to give an odd lot jury instruction. Her proposed instruction provided:

> If, as a result of an industrial injury, a worker is able to perform only odd jobs or special work, not generally available, then the work [sic] is totally disabled, unless the Department proves by a preponderance of evidence that odd jobs or special work that she can perform is available to the worker on a reasonably continuous basis.

Lawrence contended the sit/stand stool accommodation rendered the cashiering job "not normal" and made the odd lot instruction applicable. The court declined to give the instruction.

Additionally, Lawrence objected to the introduction of evidence relating to her drug use and criminal history as irrelevant and unduly prejudicial. The Department argued the evidence related to her mental health condition. It further argued Lawrence could object only on relevance grounds because she did not object to the evidence as prejudicial before the Board. The court allowed the evidence relating to the drug use and criminal history.

On September 26, 2017, the jury returned a verdict affirming the Board's decision. Lawrence appeals.

## II.
## ANALYSIS

A. Odd Lot Jury Instruction

Lawrence argues the trial court should have given an odd lot jury

---

[2] The parties did not dispute the category two award for Lawrence's back injury.

5

instruction because, after she proved a prima facie case of total disability, the Department countered that she could perform special work. The Department contends the instruction was not supported by substantial evidence and would have misled the jury. We determine the trial court did not err by refusing to give an odd lot instruction.

We review a trial court's decision whether to give a jury instruction for an abuse of discretion. Fergen v. Sestero, 182 Wn.2d 794, 802, 346 P.3d 708 (2015). An abuse of discretion occurs when no reasonable person would take the position adopted by the trial court. Thomas v. Wilfac, Inc., 65 Wn. App. 255, 262, 828 P.2d 597 (1992). Whether a court should give an instruction depends on the facts of the case. Fergen, 182 Wn.2d at 803. A court should instruct a jury on a party's theory of their case when substantial evidence supports it. Fergen, 182 Wn.2d at 810. "Jury instructions are generally sufficient if they are supported by the evidence, allow each party to argue its theory of the case, and when read as a whole, properly inform the trier of fact of the applicable law." Fergen, 182 Wn.2d at 803.

RCW 51.08.160 defines "permanent total disability" as the "loss of both legs, or arms, or one leg and one arm, total loss of eyesight, paralysis or other condition permanently incapacitating the worker from performing any work at any gainful occupation." The worker bears the burden of proving total disability. Graham v. Weyerhaeuser Co., 71 Wn. App. 55, 62, 856 P.2d 717 (1993), overruled on other grounds by Leeper v. Dep't of Labor & Indus., 123 Wn.2d 803, 872 P.2d 507 (1994). The worker meets this burden with proof of inability to

perform general work. Graham, 71 Wn. App. at 62. "General work is work, including light or sedentary work, . . . that is reasonably continuous, . . . within the range of the worker's capabilities, training, education and experience, . . . and generally available on the competitive labor market." Graham, 71 Wn. App. at 60 (citations omitted).

A worker who cannot perform general work because of an industrial injury is totally disabled unless the odd lot doctrine applies. Graham, 71 Wn. App. at 61. Under the odd lot doctrine, if the worker's disability leaves them able to perform only odd jobs or special work, the worker is totally disabled unless the Department can demonstrate that such special work is obtainable. Buell v. Aetna Cas. & Sur. Co., 14 Wn. App. 742, 745, 544 P.2d 759 (1976). Special work constitutes work, including light or sedentary work, not generally available on the competitive labor market. Graham, 71 Wn. App. at 60. Thus, the doctrine shifts the burden to the Department to show that special work exists and the worker can obtain it. Kuhnle v. Dept. of Labor & Indus., 12 Wn.2d 191, 198-99, 120 P.2d 1003 (1942). Because of this burden shifting, the "odd lot doctrine operates like an affirmative defense." Graham, 71 Wn. App. at 62.

Here, Lawrence argued her 2005 injury caused her to have a total disability because she could not perform general work. Dr. Early testified Lawrence's depression and anxiety rendered her prognosis for returning to work "poor." The vocational counselor for Lawrence similarly testified she could not maintain a job as a cashier due to her physical and mental conditions.

For the Department, Dr. Seib testified Lawrence could perform light to medium full-time work. He approved her for a cashier job with a sit/stand stool accommodation. The Department's vocational counselor testified that cashier jobs providing such an accommodation were generally available in the competitive labor market.

Lawrence failed to present substantial evidence that the cashier job with a sit/stand stool accommodation constituted special work. Accordingly, she was not entitled to an odd lot instruction. The Department's vocational counselor testified he found several employers on the labor market, including 7-Eleven, AM/PM, Vitamin World, Chevron, and Shell, that could provide the sit/stand stool accommodation for a cashier position. Lawrence's vocational counselor testified he contacted some of the employers identified by the Department. He said they indicated that, while Lawrence could sit on breaks, lunch, and in between customers, she likely could not do so if the store was busy. The testimony of both vocational counselors indicated employers could provide a stool for Lawrence to use throughout the day. Lawrence did not demonstrate the accommodation rendered the cashier position not generally available on the competitive labor market. Thus, Lawrence did not provide substantial evidence that the accommodation transformed the cashier position from general to special work. The court did not abuse its discretion in refusing to give the instruction.

B. Admission of Evidence Regarding Criminal History and Drug Use

Lawrence next contends the trial court erred by admitting evidence from the psychiatric experts' testimonies regarding her drug use and criminal history

8

because it constituted irrelevant and unduly prejudicial evidence. The Department claims Lawrence waived objections to much of the evidence and, even so, all the evidence was admissible.[3] We determine the trial court properly admitted the evidence.

This court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. State v. Thomas, 150 Wn.2d 821, 856, 83 P.3d 970 (2004). Under this standard, an appellate court will reverse a trial court's decision only if no reasonable person would have made the same decision. Thomas, 150 Wn.2d at 856.

ER 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under ER 402, a court may not admit irrelevant evidence. Additionally, a court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ER 403.

Here, Lawrence argued her physical and mental conditions caused her to have a total disability. In support, Dr. Early testified that her depression and anxiety made her prognosis for return to work poor. Lawrence further argued the

---

[3] The parties debate whether Lawrence preserved objections to several pieces of evidence regarding drug use and criminal history. Additionally, where Lawrence objected, the parties debate whether she preserved objections as to both relevance and prejudice grounds. For purposes of this opinion, we assume, without deciding, that Lawrence did not waive her objections and reach the merits.

Board erred by awarding her a category two and not category three permanent partial mental disability. These arguments placed Lawrence's mental health at issue at trial.

Indeed, to prove total disability, the worker must offer more individualized evidence. Fochtman v. Dept. of Labor & Indus., 7 Wn. App. 286, 295, 499 P.2d 255 (1972). "The testimony necessarily requires a study of the whole man as an individual—his weakness and strengths, his age, education, training and experience, his reaction to his injury, his loss of function and other relevant factors." Fochtman, 7 Wn. App. at 295. Here, the Department's psychiatric expert, Dr. Robinson, testified that his evaluation of Lawrence required an extensive psychosocial and medical history, which included questions relating to her drug use and criminal history. Even Dr. Early testified to Lawrence's problems with alcohol use and drug use. The testimony of both psychiatric experts directly concerned Lawrence's mental health and whether she had a total disability. The disputed evidence was relevant.

The testimony was also not unduly prejudicial. The evidence carried probative value, relating directly to (1) whether Lawrence's injury led to a mental health condition that rendered her totally disabled; and (2) whether her mental health award should therefore be raised to a category three award. Lawrence appears to argue the evidence likely caused the jury to make its decision based on emotion rather than reason. However, we do not conclude the testimony was such that it was likely to trigger such an extreme emotional response in the jury. See Lodis v. Corbis Holdings Inc., 192 Wn. App. 30, 48, 366 P.3d 1246 (2015)

("Evidence may be unfairly prejudicial under ER 403 if it is . . . likely to trigger an emotional response rather than a rational decision among the jurors."). Lawrence does not explain why she believes evidence that she used methamphetamine, for example, would trigger such an emotional response. It was reasonable for the trial court to conclude the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Accordingly, we conclude the court did not abuse its discretion by allowing the testimony.

Affirmed.

_Chun, J._

WE CONCUR: