[No. 63-40447-1.    Division One.    December 31, 1969.]
Panel 2

HENRY NASH, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*

*Slade Gorton, Attorney General,* and *Joe Gordon, Jr., Assistant,* for appellant.

*Jackson, Ulvestad & Goodwin* and *Daniel G. Goodwin,* for respondent.

UTTER, J.—The Department of Labor and Industries appeals from a judgment on a verdict increasing a permanent, partial disability award of 45 per cent to a pension for permanent and total disability.

The issues decided on appeal are whether there was a legally sufficient rating of disability in the board record to support an increased award, whether the court should have instructed the jury relating to the action of a hearing examiner and whether an instruction explaining the nature of the act should have been given.

Claimant injured his low back on July 14, 1959, while at work as a carpenter's helper. At the time of the injury he was 53 years old. His education ended in the sixth grade. He subsequently found employment in the merchant marine, on a railroad gang, as a longshoreman, a munitions specialist for the navy and other jobs involving hard, manual labor. His work as a munitions specialist required him to defuse and clean large shells and other munitions. He last worked at this for many years before his injury.

Claimant left a job with a railroad in 1957 as a result of high blood pressure. Following this he was employed in jobs only requiring strenuous manual labor. Claimant has not worked after the back injury of 1959. When claimant's claim was closed in January, 1964, he was suffering from the effects of high blood pressure and diabetes, which also interfered with his ability to work.

The Board of Industrial Insurance Appeals (hereinafter referred to as the board) awarded claimant 45 per cent of the maximum allowable for an unspecified disability. On appeal to the superior court, three alternatives were presented to the jury by interrogatories. These were: to uphold the board rating of 45 per cent of the maximum allowable for unspecified disability; to award a pension for total and permanent disability; or, to make an award in excess of the 45 per cent but less than the total and permanent disability rating.

Three statements in the board record by the claimant's doctor set out the testimony claimant contends establishes a sufficient rating to support an increased award.[1]

■ Claimant contends the first statement of Dr. Gray supports an increase in an award for permanent, partial disability. An increase in such an award must be established

---

[1] a. "I concluded that he had a chronic disability of the back, and chronic physical impairment of the back which in itself I felt from an objective standpoint could be rated, he had about 40 or 50 per cent disability *but this completely precluded him from doing his usual work, so 40 per cent or 50 per cent physical impairment resulted in 100 per cent permanent disability as far as his usual work is concerned. That was regardless of the general disability which was pretty disabling. The fact that he had diabetes and high blood pressure secondary to the disturbances in his vision as a result of the diabetes and high blood pressure. I concluded that he was permanently unfit, then, to undertake any strenuous labor,* . . .

b. "Q. Considering the fact, Doctor, that he has had limited education and considering that he has been a laborer following construction and logging work all his life, has had no other training for sedentary work, and is 57 years of age, considering the injury he had to his back and the operations that he has had on his back, and this injury superimposed on the condition of his body that existed at the time of the injury, do you have an opinion or did you have an opinion at that

by medical testimony indicating an increase in loss of bodily function. *Page v. Department of Labor & Indus.*, 52 Wn.2d 706, 328 P.2d 663 (1958). Dr. Gray's testimony fails to establish an increase in loss of bodily function over that awarded by the department and therefore this issue should not have been submitted to the jury. With this alternative removed, the only remaining question before the jury which would have increased the department's award was the question of whether the claimant was entitled to a pension for total and permanent disability.

Claimant attempts to establish from Dr. Gray's testimony that his alleged permanent total disability was the result of either his back injury alone or, alternately, his back injury superimposed on a preexisting condition of diabetes and high blood pressure.

There is testimony of Dr. Gray sufficient to present to a jury the issue of whether the back injury alone proximately caused his alleged permanent total disability. The statute provides that the testimony to sustain an award for permanent and total disability must establish the claimant is incapable of "performing any work at any gainful occupation." RCW 51.08.160.

■ The statutory language requiring the claimant to prove he is incapable of performing any work in any gainful occupation does not mean he must be absolutely helpless, physically broken and wrecked for all purpose except to live. The intent of the act is to insure against loss of

time in August of 1963 when you examined him, as to whether or not Mr. Nash was, in your opinion, ever going to be employable in an occupation that he had been trained for? A. I felt that from a practical standpoint it would be impossible for him to obtain gainful employment on a continuous basis. . . .

c. "Q. My question was, taking into consideration . . . the fact that this condition of the spine that he has as a result of this injury superimposed upon the deficiencies that he has in his body, I believe you described diabetes and this blood pressure, and taking those facts into consideration, my question was do you have an opinion as to whether or not this injury that he had, superimposed upon these conditions, has made him totally disabled as far as employment is concerned? . . . A. My opinion is that he is totally, permanently disabled." (Italics ours.)

wage-earning capacity. A workman's wage-earning capacity may be destroyed although he still has the capacity to accomplish minor tasks. The claimant must be able to perform his work with a reasonable degree of occupational continuity. He is totally and permanently disabled if he is merely fitted to do odd jobs in special work not generally obtainable. *Kuhnle v. Department of Labor & Indus.*, 12 Wn.2d 191, 120 P.2d 1003 (1942).

When viewed in a light most favorable to the claimant, a jury would be entitled to interpret portions of Dr. Gray's first statement to mean he believed claimant was totally unable to perform his "usual" work as a result of the back disability and was permanently unfit to undertake any strenuous labor, without any consideration of any other disabilities. The jury would be entitled to infer from claimant's limited education, age and employment history that strenuous labor was all he was trained to perform, that his "usual" work was the only work he was capable of performing and therefore his capacity to perform wage-earning tasks with a reasonable degree of continuity was destroyed.

Dr. Gray's second statement insofar as it uses the word "obtain" would appear, on its face, to be insufficient to support a rating of total permanent disability as the word "obtain" does not reflect the statutory standard. *Obtaining* employment may depend upon the availability of jobs and a fluctuating employment market in any gainful occupation.

The court must, however, examine the word in the context in which it was used. The question was asked of a doctor, not an employer. The expertise the doctor possessed was his ability to diagnose the performance capabilities of the claimant. He did not attempt to qualify as an expert on the availability of employment for the claimant.

The law is a living dictionary and we do not need to go to a dead dictionary to find the precise meaning of terms used in court. Although the use of the word "obtain" was improper, the jury should be permitted to determine, in the

context in which it was used, whether the doctor meant "perform." If the jury determines "perform" was intended, the use of the word "obtain" does not nullify the consideration of this question and answer by the jury on the issue of whether back injury alone rendered the claimant totally and permanently disabled.

Claimant and the department concede the law to be that a doctor may not evaluate the disability from an injury by considering subsequent conditions which are wholly unrelated to the original injury. 1 A. Larson, Workmen's Compensation Law § 13.11 (1966); *Prince v. Department of Labor & Indus.*, 47 Wn.2d 98, 286 P.2d 707 (1955). While recognizing this to be the law, claimant attempts to establish that Dr. Gray believed the diabetes and high blood pressure preexisted the industrial injury and that he based some of his conclusions of claimant's status of total and permanent disability on these factors. The record does not support this attempt.

At no place in Dr. Gray's testimony does he indicate he was told by the claimant that he had high blood pressure or diabetes which preexisted the industrial inquiry. The record reflects Dr. Gray, in fact, specifically stated he did not know whether the symptoms of high blood pressure or diabetes arose before or after the inquiry.

For this reason the second question and answer (note[1] b.) does not contain an erroneous premise that diabetes or high blood pressure were conditions of claimant's body which preexisted the back injury.

The third statement of the doctor (note[1] c.) failed to establish a valid rating for permanent total disability inasmuch as it was predicated on diabetes and high blood pressure preexisting the injury. This issue and question and answer should be removed from the jury's consideration on retrial.

Claimant contends there was sufficient evidence in the record to support his claim that diabetes preexisted the injury. The following question and answer form the basis of his contention:

Q. Did you feel in this case the diabetes prevented or retarded as complete a recovery as it would have otherwise been possible? A. I think that this is speculative, but it is possible. I think that the long chronic diabetes problem has interfered with his general health, . . .

The answer related only to whether diabetes prevented or retarded a complete recovery and did not state the disease existed prior to the industrial accident. This is made clear in another part of the record previously referred to where Dr. Gray specifically stated he did not know whether symptoms of diabetes existed prior or subsequent to the industrial accident. There was not substantial evidence to support this contention.

There is only one question for the jury supported by medical testimony which in turn would support an award in excess of that awarded by the board. This is the narrow question of whether claimant's back injury superimposed on the condition of his body at the time of the injury (without reference to his diabetes and high blood pressure and symptoms associated with those diseases) rendered him totally and permanently disabled on January 23, 1964.

With the existence of diabetes and high blood pressure and its effect on the claimant removed from the jury's consideration, there is no question of intervening cause for the jury. The only issue on causation is whether the back injury was a proximate cause of the claimant's alleged total and permanent disability. *Hurwitz v. Department of Labor & Indus.*, 38 Wn.2d 332, 229 P.2d 505 (1951) and *Clayton v. Department of Labor & Indus.*, 36 Wn.2d 325, 217 P.2d 783 (1950).

The department raises the issue of whether the court should have instructed the jury that a hearing examiner for the board decided against the department and whether an instruction explaining, in part, the nature of the act should have been given.

■ The decision of a hearing examiner is not "a material issue before the court" for which exact findings are required. *Stratton v. Department of Labor & Indus.*, 1 Wn.

App. 77, 459 P.2d 651 (1969). The giving of this instruction was error.

■ The department argues instruction No. 6[2] invited the jury to award claimant such "sure and certain relief" (*i.e.* the pension he seeks) without regard to the facts involved. We do not agree. Although this instruction is certainly not necessary in workmen's compensation cases, it does call the attention of the jury to the theory of recovery without fault found in the workmen's compensation act. This theory is not present in most actions heard by a trial jury. The instruction does not contain the flaws cited in *Hastings v. Department of Labor & Indus.*, 24 Wn.2d 1, 163 P.2d 142 (1945) and *Parks v. Department of Labor & Indus.*, 46 Wn.2d 895, 286 P.2d 104 (1955). We conclude no error was committed by giving this instruction.

The judgment is reversed and the cause remanded for a new trial on the issues herein indicated.

HOROWITZ, A. C. J., and STAFFORD, J., concur.

---

[2]"I instruct you that the State of Washington has by law decreed that the common law remedy of workmen against employers for injuries sustained in extra hazardous work is inconsistent with modern industrial conditions, and has provided a system of industrial insurance to the end that sure and certain relief shall be given to workmen injured in extra hazardous work, regardless of questions of fault, and to the exclusion of every other remedy. The law is commonly known as the Industrial Insurance Act, or Workmen's Compensation Act, and the administration thereof is vested in the Department of Labor and Industries, which is an agency of this State and the defendant in this action."