IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| LEON VALDEZ, | ) | |
| | ) | No. 33261-6-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF LABOR AND | ) | UNPUBLISHED OPINION |
| INDUSTRIES OF THE STATE OF | ) | |
| WASHINGTON, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, J. — Leon Valdez appeals the superior court's summary judgment affirming a Board of Industrial Appeals decision that he ceased to be temporarily totally disabled on and after July 10, 2012.

One of the Department of Labor and Industries' (Department) arguments on appeal is that an employer's affiliate was used to rationalize an E-Verify[1] check on Mr. Valdez that was discriminatorily based on his workplace injury. The employer raises a novel issue of whether an employer of injury may claim benefits provided by RCW 51.32.090(4) by making an offer of special work through an affiliate. But the appeal can be resolved on the simple basis relied on by the board: Mr. Valdez failed to present

---

[1] E-Verify is an Internet-based program, operated by the United States government, that employers may use to determine whether an employee is eligible to work in the United States. *See* 8 U.S.C. § 1324a(d)(4) (authorizing employment eligibility pilot projects).

evidence that he was unable to perform or obtain gainful light-duty employment on a reasonably continuous basis in the time frame contested benefits were paid. We affirm.

FACTS AND PROCEDURAL BACKGROUND

Cascade View Fruit and Cold Storage (Cascade), located in Selah, hired Leon Valdez in June 2010 as an apple thinner.

That August 6, Mr. Valdez fell from a ladder while working, and suffered a contusion of his back and sprains of his left knee, right shoulder, thoracic region, lumbar region, and neck.[2] He was unable to work for three days. Although he visited a physician and obtained a letter requesting light-duty work, Cascade told him no such work was available. He continued working as an apple thinner for a few more months until, in November, he returned to California, where he had lived before taking the job with Cascade. According to Department records, a lawyer for Mr. Valdez made contact with the Department on November 12, 2010, and Mr. Valdez began receiving time-loss compensation benefits effective November 7.

In May 2011, Matson Fruit Company (Matson), a Washington company affiliated with Cascade, contacted Mr. Valdez and offered him what it termed a "transitional" stamper assistant/conveyor monitor job that met restrictions stated on his medical

---

[2] Later diagnoses attributed tears of the medial and lateral left knee meniscus and cartilage damage from the fall. Sometime after September 2012, Mr. Valdez underwent a meniscectomy surgery of his left knee.

provider's release. Clerk's Papers (CP) at 151. It said that if interested, Mr. Valdez should report to work at Matson on June 13, and notified him that his refusal to accept the position "may affect your time loss benefits." *Id.* When his attending physician in California cleared him to perform the job, Mr. Valdez accepted it and returned to Washington.

When Mr. Valdez reported to work, Matson required that he provide proof of eligibility to work in the United States. Matson's human resource manager, Dianna Gutierrez, attempted to verify the Social Security number Mr. Valdez provided, which proved invalid. Ms. Gutierrez notified Mr. Valdez that he had two months to provide a valid Social Security number; otherwise, his employment would terminate.

Mr. Valdez continued working at Matson as a conveyor monitor until he was notified on August 12 that because he had not furnished a valid Social Security number, he was "no longer eligible for an alternative duty assignment." CP at 155. The letter also stated:

> The Department of Labor & Industries asks us to inform workers
> when they have been released for alternative duty that such work is
> generally available, but they are ineligible for that benefit due to lack of or
> expired work authorization documents. (In other words, if not for your
> invalid [S]ocial [S]ecurity number, you could have been working
> alternative duty with regular pay/benefits.)

*Id.* It continued, "It may seem strange for us to be telling you all this," but "we want you to understand why potential time loss benefits are being affected and want to make sure

3

[the Department] understands it is not to be issuing any time loss checks for dates after August 12, 2011." *Id.* It copied the Department on the letter. Mr. Valdez's employment with Matson ended.

Despite Matson's attempted message to the Department through a copy of its August 2011 letter, on July 10 of the following year, the Department awarded time-loss compensation to Mr. Valdez for the period of August 15, 2011—following his termination of employment with Matson—through July 9, 2012. No protest or appeal was received by the Department, with the result that the July 10, 2012 order became final. RCW 51.52.050, .060.

The Department thereafter issued biweekly orders by which it awarded Mr. Valdez a total of $2,376.08 more in time-loss compensation through September 3, 2012. Cascade timely protested these payment orders.

The Department reversed the award of post-July 10 time-loss compensation, explaining, "the worker was able to work effective 7/10/12." CP at 47. It demanded that Mr. Valdez repay the $2,376.08. Mr. Valdez requested reconsideration, which was denied. Mr. Valdez then filed a protest that the Board of Industrial Insurance accepted as an appeal.

The only witnesses called to testify at the hearing before the board were Mr. Valdez and Ms. Guitierrez. The industrial appeals judge (IAJ) also admitted and published the perpetuation deposition of Dr. Larry Lefors, Mr. Valdez's Washington

physician. Both Mr. Valdez and Dr. Lefors testified that Mr. Valdez had been able to perform the work required by the conveyor monitor position he had held at Matson.

The IAJ found that Mr. Valdez's position ended for reasons unrelated to the August 6, 2010 industrial injury: it ended because he did not provide a valid Social Security number. It also found that Mr. Valdez was "able to perform the light duty job of conveyor monitor from July 10, 2012, through September 3, 2012," and that he "was able to perform and obtain gainful employment on a reasonably continuous basis from July 10, 2012, through September 3, 2012." CP at 44-45.

Based on its findings, the IAJ concluded Mr. Valdez was not a temporarily, totally disabled worker during the time frame in which contested time-loss compensation was paid, and affirmed the Department's order. The IAJ also determined, "[b]ecause claimant raised issues related to the relationship of [Matson] Fruit and Cascade View," that Matson was not the employer of injury but was "closely affiliated" with Cascade and that Matson could claim the benefits of offering a job under RCW 51.32.090(4)(b)[3]

---

[3] To incentivize employers to keep injured workers working, RCW 51.32.090(4) provides certain benefits to an "employer of injury" who offers "available work other than [the worker's] usual work," that "the worker is physically able to perform." If a worker fails to accept such an offer, his or her time-loss compensation will cease as long as the work remains available. If the worker accepts the offer, the employer will be eligible for certain subsidies. If a light-duty job ceases to be available before the injured worker is recovered enough to return to the job of injury, then the worker will again receive benefits. RCW 51.32.090(4)(b). If the employee is fired from the light-duty job for cause unrelated to the industrial injury (and provided that the same action would have been taken against other similarly-situated workers), then the employee's benefits will

5

No. 33261-6-III
*Valdez v. Dep't of Labor & Indus.*

because

> [i]t would be an absurd result to preclude a non-employer of injury from offering a light duty job that an injured worker can perform, particularly when the purpose of the statute is to return an injured worker as soon as a worker is able.

CP at 42-43.

Mr. Valdez petitioned the board for review, which was granted. Rather than adopt the IAJ's proposed decision, the board issued its own final decision and order. *See* RCW 51.52.106. Among its findings were that following his fall, Mr. Valdez was off work for three days, "but then continued to work until November 2010"; that in the position of conveyor monitor "Mr. Valdez was able to sit and stand as needed and did not have any physical difficulties performing the position", and ultimately, that he was able to perform the light-duty job of conveyor monitor during the time frame contested benefits were paid. CP at 9-10. The board concluded that Mr. Valdez was not a temporarily totally disabled worker during the time frame contested benefits were paid, but did not adopt the IAJ's conclusion that an affiliate's offer of a light-duty job was a substitute for such an offer from the employer of injury under RCW 51.32.090(4)(b).

Mr. Valdez appealed the board's decision to the superior court. He, Cascade, and the Department then filed cross motions for summary judgment.

---

not be reinstated—the job remains "available" within the meaning of RCW 51.32.090(4) *but for* the actions of the worker. *O'Keefe v. Dep't of Labor & Indus.*, 126 Wn. App. 760, 766-67, 109 P.3d 484 (2005).

6

The court granted summary judgment in favor of the Department and affirmed its order assessing the overpayment. Mr. Valdez appeals.

ANALYSIS

Confusion exists over the nature of the superior court's decision and our review. Mr. Valdez characterizes the superior court as having held "a bench trial" on January 26, 2015, following which it entered "findings of fact, conclusions of law, and a judgment." Br. of Appellant at 2. His only assignments of error are to three board findings adopted by the superior court in its own judgment, which he challenges as unsupported by substantial evidence.

Yet it was the parties' cross motions for summary judgment that the superior court recognized as before it at the January 27 hearing. Report of Proceedings (RP) at 1 ("This afternoon we have a summary judgment and cross-motion for summary judgment."). And in entering judgment, the superior court determined that "[n]o genuine issue of material fact exists," and "[t]he Defendant, Department is entitled to judgment as a matter of law." CP at 433.

Unfortunately, the superior court's judgment goes on to say that "[a] preponderance of evidence supports the Board's Findings of Fact," and it "adopts as its Findings of Fact, and incorporates by this reference, the Board's Findings of Facts Nos. 1 through 11 of the April 29, 2014, Decision and Order." CP at 433.

"[F]indings of fact on summary judgment are not proper, are superfluous, and are

7

not considered by the appellate court." *Hemenway v. Miller*, 116 Wn.2d 725, 731, 807 P.2d 863 (1991). And a finding that "a preponderance of evidence" supported the board's findings would not support summary judgment.

Since the record is clear that the case was decided on summary judgment, the appeal must be resolved on that basis. If summary judgment was improperly granted, then we would remand the case to the superior court for its de novo review of the board's decision on the merits. Any party losing on the merits could then appeal and challenge the sufficiency of evidence to support the *superior court's* findings.[4] *Cf. Spring v. Dep't of Labor & Indus., (Spring* II) 39 Wn. App. 751, 753, 695 P.2d 612 (1985) (addressing a second appeal, after reversal of summary judgment in the first resulted in remand to the trial court).

---

[4] Unlike the nature of this court's review in most appeals of administrative decisions, our review on appeal in workers' compensation cases is of the superior court's decision, not the board's. *Rogers v. Dep't of Labor & Indus.*, 151 Wn. App. 174, 179-81, 210 P.3d 355 (2009). The superior court's task on appeal is to review the board's decision de novo, basing its decision solely on the evidence and testimony presented to the board. *Stelter v. Dep't of Labor & Indus.*, 147 Wn.2d 702, 707, 57 P.3d 248 (2002). Accordingly, when the superior court reweighs the evidence, we review its findings and conclusions.

Where a superior court grants *summary judgment* affirming a board decision, however, "the appellate court's inquiry is the same as that of the superior court." *Id.* (citing *Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 451, 842 P.2d 956 (1993)). In other words, where summary judgment is granted, both the superior court and this court ask the same question: has the moving party demonstrated that the evidence presented to the board presented no genuine issue of material fact, such that the moving party is entitled to judgment as a matter of law? *See id.*

We therefore review only whether *undisputed evidence* supports the superior court's judgment in favor of the Department and Cascade. We will treat Mr. Valdez's assignments of error as identifying matters that he contends were factually disputed or, if undisputed, supported judgment in his favor.

### Matters That Mr. Valdez Claims to Have Demonstrated Before the Board

Thus construed, Mr. Valdez contends the following matters were disputed or, if undisputed, supported judgment in his favor: (1) whether he was unable to perform and obtain gainful employment on a reasonably continuous basis during the time frame contested benefits were paid; (2) whether, during that period, light-duty work as a conveyor monitor was generally available in the labor market, or, alternatively, whether special work in that position had been validly offered by Matson;[5] and (3) whether the Department correctly assessed an overpayment of $2,376.08 for that time period. Br. of Appellant at 3.

The simplest basis on which to resolve the appeal is that relied on by the board: Mr. Valdez failed to present evidence that he was unable to perform or obtain light-duty

---

[5] While Mr. Valdez's second assignment of error speaks only of whether "Mr. Valdez was able to perform the light-duty job of conveyor monitor" during the relevant time frame, it is clear from his briefing that he disputes whether the conveyor monitor job was generally available, or, if not, whether Matson's offer of the position complied with RCW 51.32.090(4)(b) and thereby excused Cascade from further liability if Matson terminated his employment for cause unrelated to his industrial injury.

work on a reasonably continuous basis. We therefore do not reach the parties' disputes over whether Cascade could claim the benefits afforded an "employer of injury" under RCW 51.32.090(4)(b) by making an offer of special work through an affiliate, or whether Title 51 RCW forbids an employer from discriminatorily conducting immigration checks of injured employees.

### Entitlement to Time-Loss Compensation upon Total Temporary Disability

Under Washington's Industrial Insurance Act, Title 51 RCW, a worker disabled in the course of employment is entitled to workers' compensation benefits. RCW 51.32.010. "'Temporary total disability' is a condition that temporarily incapacitates a worker from performing any work at any gainful employment." *Hubbard v. Dep't of Labor & Indus.*, 140 Wn.2d 35, 43, 992 P.2d 1002 (2000). It "differs from permanent total disability in duration, not character." *O'Keefe*, 126 Wn. App. at 768.

"[T]otal disability does not mean that the worker must have become physically or mentally helpless." 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 155.07, at 148 (6th ed. 2012) (WPI) (approved by *Leeper v. Department of Labor & Industries*, 123 Wn.2d 803, 806, 872 P.2d 507 (1994)). Instead, it is "the loss of all reasonable wage-earning capacity." WPI 155.07. A worker is not totally disabled solely because he is unable to return to his former occupation. *Hunter v. Bethel Sch. Dist.*, 71 Wn. App. 501, 507, 859 P.2d 652 (1993). Instead, a worker is

10

totally disabled if he or she is not capable of reasonably continuous employment at any kind of generally available work. *Id.* "General work means even light or sedentary work, if it is reasonably continuous, within the range of the claimant's capabilities, training, and experience, and generally available on the competitive labor market." *Young v. Dep't of Labor & Indus.*, 81 Wn. App. 123, 131, 913 P.2d 402 (1996).

"The ultimate goal [of time-loss compensation] is to provide temporary financial support until the injured worker is able to return to work." *Kaiser Aluminum & Chem. Corp. v. Overdorff*, 57 Wn. App. 291, 296, 788 P.2d 8 (1990). Consistent with that goal, time-loss compensation terminates as soon as the worker's condition becomes fixed and stable, or as soon as the worker is able to perform any kind of work. *Hunter*, 71 Wn. App. at 507; RCW 51.32.090(3)(a).

If a worker *is* able to do light work of a general nature but is unable to find work, the presumption is that fluctuations in the labor market rather than consequences of the workplace injury are to blame. *Leeper*, 123 Wn.2d at 814 (citing *Spring v. Dep't of Labor & Indus.*, 96 Wn.2d 914, 921, 640 P.2d 1 (1982) (Dolliver, J., dissenting)). The burden is on the worker to show there is no work he can obtain.

Even where the worker has proved that he or she cannot perform or obtain general work, an employer may avoid liability for time-loss compensation by proving that the worker can both perform and obtain "special work." *Graham v. Weyerhauser Co.*, 71 Wn. App. 55, 62-63, 856 P.2d 717 (1993), *overruled on other grounds by Leeper*, 123

11

Wn.2d at 818. This employer response on the issue of employability—often referred to as the "odd lot" doctrine—was adopted by Washington courts in 1942. *Fochtman v. Dep't of Labor & Indus.*, 7 Wn. App. 286, 292, 499 P.2d 255 (1972) (citing *Kuhnle v. Dep't of Labor & Indus.*, 12 Wn.2d 191, 120 P.2d 1003 (1942)). In *Graham*, the Court of Appeals characterized the odd lot doctrine as "operat[ing] like an affirmative defense; when successfully invoked by the employer, it precludes a finding of total disability, even though the worker may have proved that he or she cannot perform general work." 71 Wn. App. at 62-63. Washington decisions recognize that assertion of the odd lot doctrine shifts the burden of persuasion to the Department or the employer—but not until the worker has made out a prima facie case of disability. *Leeper*, 123 Wn.2d at 815.

Testimony as to "light-duty" work is key in this appeal. Light-duty work may or may not be special, or odd lot, work. Here, as elsewhere, whether light-duty work is special work dictates the burden of proof. The *worker* bears the burden of proving that he or she "is incapable of performing light or sedentary work of a *general* nature." *Spring*, 96 Wn.2d at 919. If, however, the worker can no longer perform light or sedentary work of a general nature and "'is fitted only to perform "odd jobs" or special work, not generally available,'" then "'the burden is on the [D]epartment,'" or the employer, "'to show that there is special work that he can in fact obtain.'" *Id.* (quoting *Kuhnle*, 12 Wn.2d at 198-99).

No. 33261-6-III
*Valdez v. Dep't of Labor & Indus.*

*Summary Judgment*

The decisive issue on appeal is whether Mr. Valdez met his burden of producing evidence that he was unable to perform or obtain gainful employment (including light-duty employment) on a reasonably continuous basis as a result of the injury incurred while working for Cascade.

A defendant may move for summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *Young v. Key Pharm.*, 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989), *overruled on other grounds by* 130 Wn.2d 160, 990 P.2d 59 (1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). Once this showing is made, the burden shifts to the plaintiff, and if the plaintiff fails to make a showing sufficient to establish the existence of an element essential to its case, on which it will bear the burden of proof at trial, then the court should grant the motion. *Id.* at 225 (citing *Celotex*, 477 U.S. at 322).

"In a claim for workers' compensation benefits, the injured worker bears the burden of proving that he is entitled to benefits. If this burden cannot be met as a matter of law, summary judgment for the Department is proper." *Knight v. Dep't of Labor & Indus.*, 181 Wn. App. 788, 795-96, 321 P.3d 1275 (2014) (footnote omitted).

Washington cases recognize three types of evidence historically offered by workers to show they are unable to perform and obtain gainful employment on a reasonably continuous basis: testimony from the worker or his coworkers, testimony of a

13

vocational expert, or testimony of a medical expert.

Evidence that the worker has attempted but been unable to find employment, coupled with evidence of injury and a causal relation between the injury and the inability to obtain work, will support this essential element of a worker's claim. Proof that the injury caused the inability to obtain work "comes not only from *the circumstances of the claimant's attempts to seek employment*, but also from the reasonable inferences arising from the medical and vocational evidence." *Leeper*, 123 Wn.2d at 815 (emphasis added). At the hearing before the board, Mr. Valdez offered no evidence that he had attempted, unsuccessfully, to find work.[6]

Testimony of a medical expert can address the general availability of jobs the worker can perform, although Washington cases have increasingly recognized that testimony from a vocational expert is the better and more common method for proving employability. In 1972, this court observed that

---

[6] The proposed decision of the IAJ fairly summarizes Mr. Valdez's testimony at the hearing as recapping events related to his Cascade and Matson employment in the period from June 2010 through September 2012 and as describing his life changes after the industrial injury. It fairly summarizes his testimony as to the life changes as follows:

He used to play basketball and walk a lot; however he is no longer able to play basketball and has difficulty walking. He is unable to get up quickly from a chair and has to lower himself into it slowly, using the arms of the chair to support himself. He has difficulty going up or down stairs and must go slowly. His knee hurts a lot whether he is sitting, standing, or lying down.

CP at 39.

14

> Traditionally, total disability cases have been proved by lay testimony of the injured workman and fellow employees, together with medical testimony as to the facts of loss of function and disability as well as the doctor's *conclusion* that the injured workman is totally permanently disabled.

*Fochtman*, 7 Wn. App. at 295. While not disagreeing with that method of proof, the *Fochtman* court stated, "[W]e do question whether most doctors are familiar with intricacies of the labor market." *Id.* It held that in connection with "the ultimate determination of whether the injured workman can maintain gainful employment in the labor market with reasonable continuity we find the testimony of a vocational or employment expert both relevant and admissible." *Id.*

In 1982, in *Spring*, our Supreme Court observed that, "the use of vocational expert testimony in disability cases has become increasingly prevalent over the last decade and should be encouraged." 96 Wn.2d at 920. "Vocational experts can often offer a more realistic appraisal of the overall ability and motivation of an injured worker, as their testimony is more likely to include an economic as well as a medical analysis." *Id.*

In 1994, in *Leeper*, our Supreme Court characterized the practice of "using vocational experts to assess a claimant's disability, or, as the *Fochtman* court named it, the worker's 'employability'" as a "now universal practice." 123 Wn.2d at 812 (quoting *Fochtman*, 7 Wn. App. at 288).

At the hearing before the IAJ, Mr. Valdez did not offer the testimony of a vocational expert. He cites *Young* for its holding that the testimony of a vocational

15

expert, while relevant, is not necessary to establish total disability. Br. of Appellant at 9 (citing *Young*, 81 Wn. App. at 132). But in *Young*, the treating physician (who declined to express an opinion on employability *because* he was not a vocational expert) testified that a "'very real factor'" in Ms. Young's ability to find work would be "that she may be able to work four hours one day and only one or two hours the next day." 81 Wn. App. at 126. The court held that these and Ms. Young's other significant physical limitations,[7] coupled with her limited employment skills, supported the "common sense" conclusion that she would be unable to find or retain reasonably continuous gainful employment. *Id.* at 132.

The only testimony that directly addressed Mr. Valdez's employability was that of Dr. Lefors. Mr. Valdez contends the doctor provided the essential evidence that he was incapable of gainful employment on a reasonably continuous basis in work generally available in his labor market. But Mr. Valdez overlooks the fact—not overlooked by the board—that in eliciting Dr. Lefors' opinion, Mr. Valdez's lawyer explicitly excluded light-duty work. And he specifically excluded the light-duty work as a conveyor monitor

---

[7] Her physician testified that Ms. Young could "sit for only one-half hour at a time, for a total of three hours in an eight-hour day; stand for 15 minutes, for a total of one hour a day; and walk for 15 minutes, for a total of one-half hour a day. . . . She could not squat, crawl, climb ladders or stairs, and she could only bend or kneel occasionally. Her only unobstructed movements were fine manipulation, such as that used with hand controls." *Young*, 81 Wn. App. at 126. Mr. Valdez had fewer and lesser limitations. *See* CP at 9 (finding of fact no.4, describing limitations).

16

No. 33261-6-III
*Valdez v. Dep't of Labor & Indus.*

that Mr. Valdez had been cleared to perform and had actually performed between June

and August 2012. Dr. Lefors testified:

> [Q.] Do you have an opinion as to whether or not Mr. Valdez would have
> been capable of gainful employment on a reasonably continuous basis in
> work generally available in his labor market *aside from a light-duty type of
> a job, like a conveyor monitor*, during the time period July 10, 2012,
> through September 3, 2012?
>
> . . . .
>
> A. I don't believe he would have.

CP at 183 (emphasis added).

Elsewhere in his deposition, Dr. Lefors testified that in December 2012, he

reviewed an analysis of the "light-duty job of conveyor monitor," discussed the job with

Mr. Valdez, and concluded that Mr. Valdez could do the job. CP at 182.

In addition to Dr. Lefors' testimony, Ms. Gutierrez testified at the hearing that had

Mr. Valdez presented a valid Social Security number, the job of conveyor monitor would

have been available to him during the time frame contested benefits were paid.

And as found by the board, Mr. Valdez continued to work thinning trees for

several months despite his injury and had no physical difficulty performing the conveyor

monitor job.

It is Mr. Valdez's position on appeal that he could legitimately carve out "light-

duty jobs" in eliciting Dr. Lefors' opinion and was not required to concern himself with

evidence that the conveyor monitor job was an available job that he could perform

because the job was *special work*—an odd lot position, not generally available in the

17

labor market. As evidence of this, he points to Matson's own characterization of the job as being a "new position," a "transitional job" and a "modified position." Appellant's Reply Br. at 9. He argues that given Matson's characterizations of the position offered, "[i]t should . . . be no surprise that there was not a [single] witness asked" whether conveyor monitor work or other light-duty work he was capable of performing was generally available in the labor market. *Id.* at 10. He argues that the Department or Cascade bore the burden of proving that such special work was available.

Language from this court's decisions in *Hunter* and *Herr v. Department of Labor & Industries*, 74 Wn. App. 632, 634, 875 P.2d 11 (1994), lends support to an argument that if Matson offered the conveyor monitor job under RCW 51.32.090(4), it is evidence that Matson, at least, *might* have believed the conveyor monitor job was special work. Both *Hunter* and *Herr* involved a different issue: whether 1975 changes to RCW 51.32.090(4) provided that a worker would remain temporarily totally disabled and entitled to time-loss compensation until able to return to his or her "usual work." The workers based their argument on the fact that the 1975 changes provided a method by which an employer can offer a worker "available work *other than his or her usual work.*" RCW 51.32.090(4)(b) (emphasis added).

In rejecting the argument, this court pointed out that subsection (4) applies only when an employer is making an offer to a "worker who is entitled to temporary total disability under this chapter":

18

> We interpret this phrase as making subsection (4) applicable to claimants who are incapable of reasonably continuous employment in work that is generally available on the open job market. Where a claimant is otherwise temporarily totally disabled, subsection (4) structures the conditions under which employers may employ them in specially created jobs.

*Hunter*, 71 Wn. App. at 509. In other words, RCW 51.32.090(4) offers are necessarily of special work.

We assume without deciding that an employer who offers work under RCW 51.32.090(4) does not thereby *admit* that the work offered is special work,[8] since there are reasons an employer would accept a Department finding that a worker was totally temporarily disabled and offer a light-duty, *generally available* position, even if it believed the Department's finding was wrong. At most, Matson's offer of the conveyor monitor job under RCW 51.32.090(4) suggests Matson might have viewed the position as special work as of May 2011. But Mr. Valdez never asked Ms. Guttierez if that was Matson's view. And even if it had that view, it might have been wrong. Neither Ms. Guttierez nor any other witness at the board hearing testified that conveyor monitor or other similar light-duty work was not available in the labor market.

Also, Mr. Valdez was required to present evidence that he was unable to perform and obtain gainful employment on a reasonably continuous basis between July 10, 2012 and September 3, 2012—more than a year after Matson's May 2011 offer.

---

[8] The parties did not address this issue in their briefing. *See* RAP 12.1(a).

"Time loss is by definition . . . temporary." *In re Billings*, No. 70,883, 1986 WL 31854, at \*3 (Wash. Bd. of Indus. Ins. Appeals July 30, 1986). In *Billings*, the board determined that the claimant failed to present a prima facie case of entitlement to time-loss compensation when he relied entirely on an inference to be drawn from final and binding time-loss compensation awards in his favor for periods before and after the contested benefit period. The Department, which chose not to present any evidence, prevailed. As explained by the board:

> There is no presumption that a temporary disability will continue into the future or that it has existed for a period into the past. A presumption of continued disability does exist in cases in which a worker has been determined permanently and totally disabled. *See Department of Labor and Industries v. Moser*, 35 Wn App. 204 (1983); *See also Malland v. Retirement Systems*, 103 Wn 2d. 484, 488 (1985). No such legal presumption can arise, however, where the determination is limited to a finding of temporary disability for a particular period of time.

*Id.*

By the same reasoning, even if Matson's offer could be viewed as some evidence that it viewed the conveyor monitor job as special work, not generally available in May 2011, it is not evidence that Mr. Valdez was unable to perform or obtain gainful employment on a reasonably consistent basis over a year later.

Viewed in the light most favorable to Mr. Valdez, evidence before the board established only that he was incapable of *some* employment in the general labor market: employment "*aside from a light-duty type of a job, like conveyor monitor*." CP at 183

20

No. 33261-6-III
*Valdez v. Dep't of Labor & Indus.*

(emphasis added). But again, "[g]eneral work means even light or sedentary work." *Young*, 81 Wn. App. at 131. Since Mr. Valdez failed to present evidence in support of an essential element on which he bore the burden of proof, the Department and Matson were entitled to summary judgment.

## Attorney fees

Mr. Valdez requests attorney fees and costs pursuant to RCW 51.52.130 and RAP 18.1. RAP 18.1 provides an appellant the right to recover reasonable attorney fees if applicable law so provides. RCW 51.52.130 provides a claimant the right to recover reasonable attorney's fees if, on appeal to the superior court or the court of appeals, the Department's order is reversed or modified to grant additional relief to the claimant. Since we affirm the Department's order, the request for fees is denied.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____        _____
Fearing, C.J                                               Lawrence-Berrey, J.

21